**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **CALVIN DENELL WILLIAMS,** | ) | |
| **ID # 1596586,** | ) | |
| **Petitioner,** | ) | |
| **vs.** | ) | **No. 3:13-CV-3156-D (BH)** |
| | ) | |
| **WILLIAM STEPHENS, Director,** | ) | **Referred to U.S. Magistrate Judge** |
| **Texas Department of Criminal** | ) | |
| **Justice, Correctional Institutions Division,** | ) | |
| **Respondent.** | ) | |

<u>**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**</u>

Pursuant to *Special Order 3-251*, this habeas case has been referred for findings, conclusions, and recommendation. Based on the relevant findings and applicable law, the petition for writ of habeas corpus under 28 U.S.C. § 2254 should be **DENIED** with prejudice.

## I. BACKGROUND

Calvin Denell Williams (Petitioner) challenges his conviction for murder in cause F08-50679-H in the Criminal District Court Number One of Dallas County, Texas. The respondent is William Stephens, Director of TDCJ-CID (Respondent).

**A.** <u>**Factual and Procedural History**</u>

On February 20, 2008, the State indicted Petitioner for the murder of Michael Kimble on January 12, 2008. Clerk's Record ("CR") Volume 1, 1-2, ECF No.7-9, 5-6. A jury found him guilty and assessed punishment at eighty years' imprisonment. *Id.* at 49, 53; ECF No. 7-9, 52, 56. The state appellate court recounted the evidence presented at trial as follows:

> The day before Kimble's body was discovered, he was seen with [Petitioner] several times. The deceased had hired [Petitioner] to work with him and his nephew on a roofing job they were doing for a contractor. The nephew testified that while they were working on the roof, [Petitioner] became visibly angry and demanded to know when he would be paid. The day before Kimble's body was found, [Petitioner], the deceased, and his nephew worked on the roof together for a time,

then [Petitioner], the deceased, and the contractor went to Home Depot together to get supplies. They never returned to the job site while the nephew was there.

That same day, a woman who knew Kimble saw two men in the driveway of the house where the roof work was occurring. The men were arguing about money in a car that matched [Petitioner]'s. The owner of the house told the woman that the deceased was one of the men in the car. Later in the day, the woman saw a man arguing with the deceased about money at two separate locations in the vicinity. She first saw a man arguing with the deceased in front of a donut shop. She saw the same man arguing with the deceased sometime after 8:00 that night at the parking lot for the Packing House Market on Malcolm X Boulevard. She heard the man say, "I want my money or somebody's going to get hurt." At approximately 8:50 that night, she saw the deceased standing by himself in front of the market. His body was found the next day near a warehouse at Forest Avenue and Lamar Street in South Dallas. He had died from multiple sharp force injuries. [Petitioner] and the deceased were both drug addicts. What appeared to be a crack pipe was found in the deceased's clothing, and testing of his blood showed the presence of cocaine and a blood-alcohol level over twice the legal limit for intoxication.

DNA evidence found on [Petitioner]'s belt presumptively tested for blood and was linked to the deceased. Testing of other items of [Petitioner]'s clothing and a folding knife, all gathered from [Petitioner]'s home four days after the deceased's body was discovered, was inconclusive.

Initially, [Petitioner] denied any involvement in the victim's death. Nine months later, in a phone call linked to his jail account, he told his wife he had decided he was going to claim self-defense. A police officer who had talked extensively with both [Petitioner] and his wife was able to identify both their voices on the recording. At the time of trial, [Petitioner]'s wife had left the state, and the prosecution had been unable to locate her.

After the deceased's death, [Petitioner] stopped visiting the deceased's home, which he had been doing on a nearly daily basis. The deceased's nephew encountered [Petitioner] at the county jail. [Petitioner] threatened the nephew that he would kill him if he participated in the trial against him. An aunt of [Petitioner]'s wife who let the couple stay overnight at her home on occasion testified that the day after [Petitioner]'s arrest, he called her house from the jail. She confronted him about killing the deceased and [Petitioner] claimed the deceased had said he was going to "go back and hurt my wife, so I done what I had to do." The night before the deceased's body was found, [Petitioner] and his wife had stayed at the aunt's home. The aunt overheard him angrily complaining to his wife that a man owed him money. She stated that she never heard [Petitioner] claim someone had tried to hurt her niece until after [Petitioner] was in jail.

2

*Williams v. State,* No. 05-09-01060-CR, 2011 WL 1888258 at *1-2 (Tex. App.–Dallas, May 19, 2011, pet. ref'd).  The Fifth Court of Appeals of Texas affirmed Petitioner's conviction. *Id.*  He filed a petition for discretionary review, but it was subsequently refused by the Texas Court of Criminal Appeals.  *See Williams v. State,* PD-0960-11 (Tex. Crim App. Feb. 1, 2012), *available at* http://www.search.txcourts.gov/Case,aspx?cn=PD-0960-11&coa.  He did not file a petition for writ of certiorari with the Supreme Court.   On November 2, 2012, Petitioner filed a state habeas application for writ of habeas corpus that raised many of the claims asserted in his federal petition. *Ex parte Williams*, No.78,906-01, at 2-13, ECF No. 7-18, 8-19.   On March 20, 2103, the Texas Court of Criminal Appeals denied the state writ application without a written order. *Id.* at cover, ECF No. 7-18, 2.

Petitioner mailed his federal habeas petition, with a memorandum in support, on August 4, 2013,. (Pet. at 10, (doc 3); Memorandum (Memo.) (doc. 4.)  Respondent filed the state court records and an answer on December 16, 2013, and Petitioner filed his reply on February 24, 2014.

**B.** **Substantive Claims**

Petitioner raises the following claims for relief:

–he was denied his right of confrontation, as guaranteed by the federal and state constitutions, when the trial court admitted into evidence a DVD recording of his police interrogation (ground one);

–he was denied due process of law and equal protection of the law when the trial court: (a) conducted a pre-trial hearing regarding the State's continuance request outside of his presence; and (b) allowed a State's witness to testify despite being excluded from the State's witness list (ground two));

 –his trial counsel was ineffective when he: (a) failed to request funds for experts to testify regarding the manner and means of death, and regarding the effects of his

crack cocaine use;[1] and (b) waived Petitioner's right to be present at the pre-trial hearing (ground three);

- he was denied due process of law and equal protection of law when the prosecutor expressed her own personal opinion during closing argument about what Petitioner's wife would say if she had testified at trial (ground four); and

-the evidence is legally insufficient to support his conviction because the State failed to prove that he caused the victim's death (ground five).

## II. STATE LAW CLAIMS

Petitioner contends that he was denied the right of confrontation guaranteed by the state constitution (ground 1), the trial court improperly allowed a witness to testify despite being excluded from the State's witness list (ground 2(b)), and he was denied the effective assistance of trial counsel as guaranteed by the state constitution (ground 3).  The claims arise under Texas law.

In federal habeas corpus actions, federal courts do not sit to review errors under state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[w]e have stated many times that 'federal habeas corpus relief does not lie for errors of state law' . . . In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, law, or treaties of the United States") (citations omitted);  *see also Little v. Johnson*, 162 F.3d 855, 862 (5th Cir. 1998); *Derden v. McNeel*, 978 F.2d 1453, 1458 (5th Cir. 1992) ("errors of state law, including evidentiary errors, are not cognizable in habeas corpus") (citing *McGuire*, 502 U.S. at 67-68)).  To the extent that Petitioner seeks relief on these grounds based on state law, his claims must be dismissed because they fail to raise a cognizable issue in a federal habeas corpus proceeding.

---

[1] Petitioner did not list the failure to hire an expert regarding the effects of his crack cocaine use in his petition, but he raised it in his memorandum in support. (Memo. at 19, 24.)

### III. LACK OF EXHAUSTION/PROCEDURAL DEFAULT

In his second ground, Petitioner contends that the trial court denied him due process and equal protection when it allowed a witness, Scott Seacat, to testify despite not being on the witness list. (Pet. at 6; Memo. at 3, 14-15.)  He also alleges a violation of his right to equal protection of the law in grounds 3(b) and 4. In ground 3(a), he contends that trial counsel was ineffective for failing to request funds for an expert to testify regarding the effects of his crack cocaine use.

On direct appeal and in his petition for discretionary review, Petitioner raised only a state law claim that the trial court erred when it allowed Mr. Seacat to testify although he was not on the State's witness list. *Williams v. State*, 2011 WL 1888258, at *4;  Pet. at 3.  He also asserted the state law claim in his state habeas application, but he failed to raise the federal constitutional violations he now asserts in his federal petition. *Ex parte Williams*, No.78,906-01, Supp. Rec., 9, 50-54, ECF No. 7-17, 12, 54-57.  He also failed to raise any equal protection ground in his state habeas application, *Ex parte Williams*, No. 78,906-01, Supp. Rec. 50-60, 70-78, ECF NO. 7-17, 53-63, 73-83, and any claim that trial counsel was ineffective for failing to request funds for an expert to testify regarding the effects of his crack cocaine use.  *Id.* at 11, 61-69, ECF no. 7-17, 14, 64-71.

A petitioner must fully exhaust state remedies before seeking federal habeas relief.  28 U.S.C. § 2254(b).  To exhaust under § 2254, a petitioner must fairly present the factual and legal basis of any claim to the highest available state court for review prior to raising it in federal court. *See Deters v. Collins*, 985 F.2d 789, 795 (5th Cir. 1993); *Richardson v. Procunier*, 762 F.2d 429, 432 (5th Cir. 1985); *Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir. 1982).  In Texas, a prisoner must present his claim to the Texas Court of Criminal Appeals in a petition for discretionary review (PDR) or an application for writ of habeas corpus. *See Bautista v. McCotter*, 793 F.2d 109, 110 (5th

Cir. 1986); *Richardson*, 762 F.2d at 432.  A petitioner must present his claims in a procedurally correct manner as well.  *Beazley v. Johnson*, 242 F.3d 248, 263 (5th Cir. 2001); *Deters*, 985 F.2d at 795.  Here, Petitioner has attempted to present original arguments to the federal court before the state courts had the opportunity to rule on them, thereby preventing the state courts from ruling on, and if necessary correcting, any constitutional errors that might have occurred in this case.  *See Castille v. Peoples*, 489 U.S. 346, 351 (1989); *Picard v. Connor*, 404 U.S. 270, 275-77 (1971) (holding that for exhaustion purposes the claim must include the specific federal constitutional guarantee, and noting that "we cannot fault the [state court] for failing to consider *sua sponte* whether the [challenged] procedure denied [the petitioner] equal protection of laws").

Notwithstanding the fact that Petitioner's claims have not been exhausted, the federal court may still find them to be procedurally barred.  *See Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).  The normal rule that a state court must explicitly apply a procedural bar to preclude federal review does not apply to those cases where a petitioner has failed to exhaust his state court remedies, and the state court to which he would be required to present his unexhausted claims would now find those claims to be procedurally barred.  *Id*.  In those cases, the federal procedural default doctrine precludes federal habeas corpus review.  *Id*.; *see also Nobles v. Johnson*, 127 F.3d 409, 423 (5th Cir. 1997) (finding unexhausted claim that would be barred by the Texas abuse-of-the-writ doctrine if raised in a successive state habeas petition, to be procedurally barred); *see also Emery v. Johnson*, 139 F.3d 191, 196 (5th Cir. 1997) (same).

Here, if Petitioner brought his unexhausted claim in a subsequent state writ of habeas corpus, the Court of Criminal Appeals would consider this claim to be procedurally defaulted under Article 11.07 § 4 of the Texas Code of Criminal Procedure.  That section prohibits a claim from being raised

6

in a subsequent habeas application unless: 1) it was not and could not have been raised in the previous application because the factual or legal basis was unavailable at the time; or 2) the claim contains sufficient facts establishing by a preponderance of the evidence that but for a violation of the United States Constitution, no rational juror would have found petitioner guilty beyond a reasonable doubt. See Tex.Code Crim. Proc. Ann. art 11.07 § 4(a) (Vernon Supp. 2014). By the end of the trial, Petitioner was aware of his claims based on the testimony of witness Seacat, the alleged violation of equal protection, and counsel's failure to seek an expert regarding crack cocaine use. He therefore has not alleged and could not show that he could not have raised these claims in his 2012 state writ application. He has also not shown that but for constitutional error, no rational juror would have found him guilty.

Moreover, Petitioner would now have to "establish 'cause' and 'prejudice' from [the state court's] failure to consider his claim[s]." *Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir. 1995) (citing *Coleman*, 501 U.S. at 750-51)). He has failed to argue, much less establish, cause and prejudice, and he has not shown that he is actually innocent. Accordingly, his claims that he was denied the right to due process and equal protection when the trial court allowed an undisclosed  witness to testify (ground 2(b)), he was denied equal protection of the law (grounds 2(a), 3(b), and 4), and counsel was ineffective for failing to hire an expert regarding the effect of his crack cocaine use (within ground 3(a)), are barred from consideration under the federal procedural default doctrine.

## IV.  AEDPA STANDARD

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). It sub-

stantially changed the way federal courts handle habeas corpus actions.  Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court pro-ceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unrea-sonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determin-ation of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to proced-ural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).  In this case, the denial of Petitioner's state writ without written order constitutes an adjudication on the merits.  *See Ex parte Thomas*, 953 S.W.2d 286, 288-89 (Tex. Crim. App. 1997) (holding that a denial, rather than a dismissal, signifies an adjudication on the merits).  Section 2254(d) therefore applies.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001).  A decision is contrary to clearly established fed-eral law within the meaning of § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  As for the "unreasonable application" standard, a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001).  Likewise, a state court unreasonably applies Supreme Court precedent if it

"unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407.  "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000).  Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000).  The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

## V. RIGHT TO CONFRONTATION (GROUND 1)

In addition to his claim under the state constitution, Petitioner also alleges in his first ground that he was denied his right of confrontation under the federal constitution when the trial court admitted a DVD recording of his interrogation by police because it contained out-of-court statements made by his wife.  (Pet. at 6; Memo at 6-10.)

The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. Amend. VI. In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court held that the Confrontation Clause barred the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify and the defendant had a prior opportunity for

cross-examination." *Id.* at 53-54. It later clarified what qualified as a "testimonial" statement in

*Davis v. Washington*, 547 U.S. 813 (2006):

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency.  They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Id.* at 822.

Here, Petitioner does not challenge the admissibility of the DVD recording of the

interrogation itself, nor does he challenge the voluntariness of his waiver of his rights under *Miranda*

*v. Arizona*, 384 U.S. 436 (1966). (Pet. at 6; Memo. at 6-9.)  Rather, he complains generally that

during the questioning, the detectives were telling him what his wife was telling them.  (Memo. at

6;.3 RR 117-18, 126, ECF No. 7-12, 88-91.)  He specifically complains about the reference to his

wife's statements that she, Petitioner, and the victim, had all gone to an area located on Lamar Street

and M.L.K. Boulevard, where Petitioner and the victim had an argument over money owed to him.

(Memo. at 6, 9.)  Petitioner appears to be objecting to hearsay statements in the DVD.

Hearsay is a statement, other than one made by the declarant while testifying at trial, that is

offered to prove the truth of the matter asserted. Tex. R. Evid. 801(d).  The detective's portion of

the recorded interrogation was not presented for the purpose of proving the truth of the matter

asserted, however, so it does not constitute hearsay.  The Confrontation Clause "does not bar the use

of testimonial statements for purposes other than establishing the truth of the matter asserted."

*Crawford*, 541 U.S. at 59 n. 9 (citing *Tennessee v. Street,* 471 U.S. 409, 414 (1985); *see also United*

*States v. Holmes,* 406 F.3d 337, 349 (5th Cir. 2005) (holding that even assuming that the disputed

statement was testimonial, "there was no constitutional error, because the government did not offer

her testimony to prove the truth of the matter asserted") (citations omitted).   In addition, the detective openly testified before the jury that not all of the questions posed during an interrogation are true and may be part of a technique to develop rapport and to draw out more information from the suspect.  3 RR 109-11, ECF No. 7-12, 87-88.  Specifically, he testified as follows:

> Q. Now, do you sometimes tell a Defendant some things that are not true?
>
> A. Sometimes, yes . . .
>
> Q. So some of the things you say may or may not be true?
>
> A. Correct.
>
> Q. Now, is that helpful? Is that a helpful technique?"
>
> A. Yes.

3 RR 109-10, ECF No. 7-12, 87.

Petitioner has not identified clearly established Supreme Court precedent holding that questions posed during a recorded interrogation constitute testimonial hearsay statements subject to

*Crawford*.  Pet. at 6; Memo. at 6-10.  Given the tangential nature of the statements he challenges in support of his *Crawford* claim, he has failed to show how the state court's denial of this claim was based on an unreasonable application of clearly established federal law. Finally, any alleged error was harmless in light of the additional evidence supporting his conviction.  As discussed in connection with his insufficiency-of-the-evidence ground, this evidence included two individuals witnessing an ongoing argument over money between Petitioner and the victim the day before his death, various threatening or incriminating statements Petitioner made following the victims' death, and the discovery of the victim's DNA from a stain on Petitioner's own belt. Consequently,

Petitioner has not demonstrated that the state court's ultimate determination was contrary to or an unreasonable application of clearly established federal law as set forth by the Supreme Court, or an unreasonable determination of the facts based on evidence in the record.  Petitioner's first ground should be denied.

## VI.  PRETRIAL HEARING (GROUND 2(a))

Petitioner next contends that he was denied the right to due process of law and equal protection of the law when the trial court conducted a pretrial hearing in his absence.  (Pet. at 6; Memo. at 10-13.)

A defendant's constitutional right to be present during trial is rooted in the Confrontation Clause of the Sixth Amendment.  *See Illinois v. Allen*, 397 U.S. 337, 338 (1970).  When a defendant is not actually confronting witnesses or evidence against him, this right is protected by the Due Process Clause.  *See United States v. Gagnon*, 470 U.S. 522, 526 (1985).  A defendant has a due process right under the Fourteenth Amendment to the Constitution to be present at a proceeding "to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." *Adanandus v. State,* 866 S. W. 2d 210, 219 (Tex. Crim. App. 1993) (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105-08 (1934), *overruled on other grounds, Malloy v. Hogan*, 378 U.S. 1 (1964)); *see also Kentucky v. Stincer*, 482 U.S. 730, 745 (1987) ("[A] defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure"); *Faretta v. California*, 422 U.S. 806, 820 n.15 (1975) (noting that "an accused has a right to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings") (citations omitted).   "'The defense has no constitutional right to be present at every interaction between a judge and a juror . . . .'", however.

*Gagnon*, 470 U.S. at 526 (quoting *Rushen v. Spain*, 464 U.S. 114, 125-26 (1983) (Stevens, J., concurring in judgment)). If the defendant's presence does not bear "'reasonably substantial relationship to the opportunity to defend,' no harm results from a defendant's absence from the proceedings against him." *Williams,* 2011 WL 1888258, at *5 (quoting *Snyder*, 291 U.S. 97).

Because the state appellate court issued the "last reasoned opinion" on the matter, the intermediate appellate decision should be reviewed to determine whether the denial of these claims was contrary to or an unreasonable application of federal law. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). The Fifth Court of Appeals reviewed the claim and ultimately held that even if the trial court erred, Petitioner had failed to establish any harm. *Williams,* 2011 WL 1888258, at *5-6. It concluded that Petitioner's attorney presented the applicable legal arguments, and that even if Petitioner had been present at the hearing, the legal issues would not have changed. *Id.* at *5. Moreover, the state court further concluded that Petitioner's absence could not have contributed to his conviction or punishment, and that there was no indication that his presence would have furthered his defense at trial. *Id*. at *5-6.

Petitioner has failed to demonstrate that the state court's determination was unreasonable. He has raised no additional legal arguments that should have been addressed at the hearing; he only asserts that his absence denied him the opportunity to rebut factual arguments made by the State. (Memo. at 12-13.) He claims that he could have provided the trial court with his own sworn statement that would have proven that the stain was unrelated to any sort of criminal act. *Id*. at 13. Petitioner provides no support for his assertion, however, and fails to demonstrate that the continuance hearing was a critical stage of trial during which his presence would contribute to the fairness of the proceedings. *Schlang v. Heard,* 691 F.2d 796, 799 (5th Cir. 1982) ("mere conclusory

13

statements do not raise a constitutional issue in a habeas case") (citations omitted); *Kentucky*, 482 U.S. at 745. Consequently, Petitioner has failed to overcome the "relitigation bar" in § 2254(d), and ground 2(a) should be denied.

## VII. INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner argues that his trial attorney was ineffective by (a) failing to request funds for an expert to testify regarding the manner and means of death; and (b) waiving his right to be present during the hearing on the motion for a continuance. (Pet. at 7; Memo. at 19-31.)

Under the clearly established federal law, a defendant alleging ineffective assistance of counsel must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Smith v. Quarterman*, 515 F.3d 392, 403 (5th Cir. 2008). A failure to establish either prong of this test requires a finding that counsel's performance was constitutionally effective. *Strickland*, 466 U.S. at 700. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000). A defendant has the burden of establishing that he was deprived of effective assistance of counsel by a preponderance of the evidence. *Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000).

To determine whether counsel's performance is constitutionally deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. Counsel are "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Pinholster*, 131 S. Ct. at 1403 (quoting *Strickland*, 466 U.S. at 690)). This standard not only gives trial counsel the benefit of the doubt, but affirmatively entertains the range of possible reasons counsel may have had for proceeding as they did. *Id*. at 1407. This showing requires a defendant to prove that his

14

counsel made "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland* 466 U.S. at 687.   Accordingly, courts "must be highly deferential" to counsel's performance. *Id.* at 689.   Every effort must be made to "eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689.

To establish prejudice, a petitioner must show that there is a reasonable probability, sufficient to undermine confidence in the outcome, that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694.   In the context of ineffective assistance of trial counsel, the prejudice component of the *Strickland* test "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Williams*, 529 U.S. at 393 n.17 (citations and internal quotation marks omitted).   "Even a deficient performance does not result in prejudice unless that conduct so undermined the proper functioning of the adversary process that the trial cannot be relied upon as having produced a just result." *Knox v. Johnson*, 224 F.3d 470, 479 (5th Cir. 2000) (citing *Strickland*, 466 U.S. at 687).   Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel. *Strickland*, 466 U.S. at 695-96.

In habeas proceedings, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable," not whether defense counsel's performance fell below *Strickland*'s standard. *Richter*, 131 S. Ct. at 785.   As the Supreme Court explained:

> [T]he two questions are different. For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams, supra* at 410.   A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

15

*Richter,* 131 S.Ct. at 785 (emphasis in original). This review is "doubly deferential" and gives both the state court and the defense attorney the benefit of the doubt. *Titlow,* 134 S. Ct. at 13 (citing *Pinholster,* 131 S.Ct. at 1403).

Petitioner raised these ineffective-assistance grounds in his state habeas application. *Ex parte Williams*, No.78,906-01, at 11, 61-67, 70-3 ECF No. 7-17, 14, 64-71, 73-76. The Texas Court of Criminal Appeals denied relief without written order based on the findings of the trial court without a hearing. *Id.* at cover. This was an adjudication on the merits. *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W. 2d 469, 472 (Tex. Crim. App. 1997) (holding a "denial" signifies an adjudication on the merits while a "dismissal" means the claim was declined on grounds other than its merits). Furthermore, the factual determinations underlying the adjudication are entitled to a presumption of correctness which must be rebutted by a presentation of clear and convincing evidence. 28 U.S.C. § 2254(e); *Neal v. Puckett*, 239 F.3d 683, 696 (5th Cir. 2001) ("[t]he only question for a federal habeas court is whether the state court's determination is 'at least minimally consistent with the facts and circumstances of the case'"). Petitioner's claims should be denied as set forth below.

## A.    Failure to Request Funds for an Expert Witness (Ground 3(a))

Petitioner contends that his counsel failed to request funds for an expert to testify regarding the manner and means of death. (Pet. at 7; Memo. at 19-24.) In his state application for writ of habeas corpus, Petitioner expressed the need for a forensic biologist, a DNA analyst, and a medical examiner. *Ex parte Williams*, No. 78, 906-01, at 62-68, ECF No. 7-17, 65-71.

"Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. In assessing

unreasonableness, however, a heavy measure of deference must be applied to counsel's judgment. *Id*. "A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989) (citations omitted).

Furthermore, "complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *See Boyd v. Estelle*, 661 F.2d 388, 390 (5th Cir. 1981) (quoting *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978)); *see also Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). "In order for [petitioner] to demonstrate the requisite *Strickland* prejudice, [he] must show not only that [the] testimony would have been favorable, but also that the witness would have testified at trial." *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir.2002) (quoting *Alexander v. Mccotter*, 775 F.2d 595, 602 (5th Cir. 1985)); *see also Day*, 566 F.3d 527, 528 (5th Cir. 2009) (noting that this requirement applies equally to claims concerning lay witnesses as well as expert witnesses) (citations omitted).

Petitioner fails to identify any particular experts, and he also fails to provide any evidence of their availability or their testimony.  (Pet. at 7; Memo. at 19-24.)  His conclusory assertions fail to demonstrate that his trial counsel was deficient and that he was prejudiced by trial counsel's performance.  They also fail to establish the critical inquiry of whether the state court's denial of this claim was an unreasonable application of federal law as determined by the Supreme Court or based on an unreasonable determination of facts in light of the evidence.  This ground should be denied.

**B.  Waiver of Petitioner's Right to Attend Hearing (Ground 3(b))**

Petitioner also claims that counsel was ineffective for waiving his right to be present at the

17

pretrial hearing.  (Pet. at 7; Memo. at 25-31.)  As discussed in relation to his denial of due process

claim, he has not shown that any additional legal issues would have been addressed in his presence,

and he has provided no support for his factual claims.  He has not shown how counsel was deficient,

nor has he shown that any error resulted in a reasonable probability that the outcome of the trial

would have been different. (Memo. at 27-28.)  Petitioner has failed to demonstrate that the denial

of this claim resulted from the unreasonable application of clearly established federal law or the

unreasonable determination of the facts, so ground 3(b) should also be denied.

## VIII. PROSECUTORIAL MISCONDUCT (GROUND 4)

Petitioner next contends that the prosecutor made an improper comment during closing

argument regarding the potential testimony of his wife that violated his right to due process. (Pet.

at 7; Memo. at 32-36.)

Under Texas law, a proper jury argument includes (1) summation of the evidence presented

at trial; (2) reasonable deductions drawn from that evidence (3) response to opposing counsel's

argument; and (4) pleas for law enforcement.  *See Cobble v. State*, 871 S.W. 2d 192, 204 (Tex. Crim.

App. 1993).  In habeas corpus proceedings, allegedly improper statements are reviewed to determine

whether they "'so infected the [trial] with unfairness as to make the resulting [conviction] a denial

of due process.'" *Barrientes v. Johnson*, 221 F.3d 741, 753 (5th Cir. 2000) (quoting *Ables v. Scott*,

73 F.3d 591, 592 n.2 (5 Cir. 1996) (internal quotation omitted).  This means the alleged conduct

must render the trial fundamentally unfair within the meaning of the Due Process Clause of the

Fourteenth Amendment.  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) ("The relevant question

is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting

conviction a denial of due process") (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974).

"Such unfairness exists only if the prosecutor's remarks evince either persistent and pronounced misconduct or . . . the evidence was so insubstantial that (in probability) but for the remarks no conviction would have occurred." *Hughes v. Quarterman*, 530 F.3d 336, 347 (5th Cir. 2008) (quoting *Harris v. Cockrell*, 313 F.3d 238, 245 (5th Cir. 2002)).

Petitioner complains of the following argument at the end of the State's rebuttal argument:

> [Prosecutor]: Now, one witness that you didn't hear from is Nadja Williams, an eyewitness to this murder. We have done everything in our power to find her, but guess what, she's not here. We know who talks to Nadja, we know who knows where she is, but guess what, she didn't show up today because she doesn't have anything to say that would help you. The Defense attorney–
>
> [Defense]: Your Honor, I'm going to object to the – the State continually addressing my client.
>
> The Court: Sustained.
>
> [Prosecutor]: The Defense attorney didn't bring in Nadja down here today because she saw her husband stab the victim nine times.
>
> [Defense]: Your Honor, I'm going to object to --
>
> The Court: Sustained
>
> [Defense]: -- facts not in evidence.
>
> [Defense]: Nadja Williams isn't here, that's obvious. Nadja Williams could have been subpoenaed by the Defense attorney, but she wasn't.

*See* 4 RR 228-29, ECF No. 7-13, 61-62.

The small amount of time devoted to this line of argument fails to rise to the persistent and pronounced conduct necessary to constitute a federal due process violation. The trial court sustained counsel's objections, and as discussed below, there is ample circumstantial evidence supporting the jury's verdict of guilty. Petitioner has not shown that no conviction would have occurred absent these remarks by the prosecutor. This ground for relief should be denied.

## IX.  SUFFICIENCY OF THE EVIDENCE (GROUND 5)

Finally, Petitioner complains that the evidence is legally insufficient to support his conviction because the State failed to prove that he had caused the victim's death.  (Pet. at 7; Memo. at 37-44.)  He contends that the States rested its case on the fact that the victim's DNA was discovered on his belt, and that no other inculpatory evidence or testimony was presented by the State. (Memo. at 41.)

The Texas Court of Criminal Appeals denied Petitioner relief on the merits when it refused his PDR.  *Williams v. State*, PDR No. 0960-11; *see Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999) (holding that the Texas court of Criminal Appeals's silent denial of relief constituted an adjudication on the merits).  The denial is presumed to rest upon the same grounds articulated by state appellate court in rejecting Petitioner's claim on direct appeal.  *See Ylst,* 501 U.S. at 803.

On federal habeas corpus review, the evidentiary sufficiency of a state court conviction is governed by the legal-sufficiency analysis set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979), which reflects the federal constitutional due process standard.  *See Woods v. Cockrell*, 307 F.3d 353, 358 (5th Cir. 2002). To be sufficient, "[t]he evidence need not exclude every reasonable hypothesis of innocence or be completely inconsistent with every conclusion except guilt, so long as a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." *United States v. Terrell*, 700 F.3d 755, 760 (5th Cir. 2012), *cert. den'd*, 133 S.Ct. 1834 (2103) (citing *United States v. Fuller*, 17 F.3d 745, 768 (5th Cir. 1994)); *see also Brown v. Collins*, 937 F.2d 175, 181 (5th Cir. 1991) (noting that the evidence need merely satisfy the "'substantive elements of the criminal offense as defined by state law'") (quoting *Jackson*, 443 U.S. at 324 n.16).  Under *Jackson*, a reviewing court determines "whether, after viewing the evidence in the light most favorable to the

prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. The evidence is viewed "in the light most favorable to the verdict, accepting all credibility choices and reasonable inferences made by the trier of fact which tend to support the verdict." *United States v. Moreno-Gonzalez*, 662 F.3d 369, 372 (5th Cir. 2011) (quoting *United States v. Asibor*, 109 F.3d 1023, 1030 (5th Cir. 1997)).

As noted above, the state court of appeals reviewed Petitioner's insufficient evidence claim and ultimately held:

> [Petitioner] specifically complains the evidence against him "falls short" of permitting the jury to find him guilty beyond a reasonable doubt. We disagree. [petitioner] was seen angrily arguing with the deceased about money he felt he was owed the day before the deceased was found stabbed to death. [petitioner] told police he had no involvement in the deceased's death, but he claimed to his wife's aunt that he had killed the deceased to protect his wife. And to his wife he stated that he was going to claim self-defense in the case. Finally, DNA evidence from [petitioner]'s belt--the item of clothing it might not have occurred to him to wash during the days after the offense–presumptively tested positive for blood and was conclusively linked to the deceased. After the offense, [petitioner] avoided the deceased's home and his wife fled the state. Viewing the evidence in the light most favorable to the verdict, we conclude it is legally sufficient to support [petitioner]'s conviction for murder.

*Williams v. State,* 2011 WL 1888258, at *2.

This determination by the state court of appeals is supported by other evidence in the record. The victim's nephew testified that his uncle and Petitioner had an argument regarding when Petitioner would be paid for the current roofing job. 3 RR 15-16, 24-25, 39-40; ECF No. 7-12, 63, 65,69. The nephew testified that Petitioner regularly came to their house but stopping coming after the murder. 3 RR 21-22, 41-42; ECF No. 7-12, 64-65, 69-70. Later, while he was in jail, he saw Petitioner while being moved to court, and Petitioner repeatedly threatened him by saying "I'm going to kill you or have something done to you if you go through with the trial." 3 RR 28-29; ECF No. 7-12, 66.

A neighbor also observed the victim arguing with another man on several occasions on January 11, 2008.  3RR 44-52; ECF No. 7-12, 70-72.  She saw them arguing in the car outside the house they were working on, at the nearby donut shop, and then later that night in the parking lot of a packing house located on Malcolm X Boulevard.  3 RR 44-45, 48-50; ECF No. 7-12, 71-72. At that last argument, she overheard the man threatening the victim by saying that he wanted his money or "somebody is going to get hurt."  3 RR 51-52; ECF No. 7-12, 72.  Petitioner's wife's aunt testified that on the evening of January 11, 2008, Petitioner and his wife had come to stay at her South Dallas home, and that Petitioner was angry and spoke about somebody owing him money. 3 RR 59-62; ECF No. 7-12, 74-75.  The day after he was arrested, he called the aunt and they proceeded to get into an argument.  3RR 65-66; ECF No. 7-12, 75-76.  During this conversation, Petitioner told the aunt that the victim "said he was going to go back and hurt my wife, so I done what I had to do."  3 RR 66; ECF No. 7-12, 66.  Evidence was also presented that many months after his detention, Petitioner informed his wife during a recorded jail telephone call that he was "going to go self-defense."  3 RR 143-44, 167-68; ECF No. 7-12, 95,101.

The evidence also revealed that a visible spot on the belt taken from Petitioner tested positive for blood in a presumptive test, but there was not enough of a sample size to perform a confirmatory test. 4 RR 133-34; ECF No. 7-13, 37-38.  The remainder of the sample was submitted for DNA testing. 4 RR 97, 100: ECF No. 7-13, 28-29 (belt seized); 4 RR 122-23; ECF No. 7-13, 35 (no biological fluids); 4 RR 123-27, 133-34; ECF No.7-13, 35-36, 37-38 (belt submitted for DNA testing).  The results produced a single male profile that matched the victim's DNA profile.  4 RR 154-56; ECF No. 7-13, 43.

Petitioner's claim that the State rested its case solely on the DNA profile retrieved from his

belt buckle is not supported by the record.  Sufficient evidence was presented during the trial that supports the conviction, and his claim to the contrary is merely a disagreement with the fact-finder's resolution of conflicts in the evidence that is foreclosed by settled principles of appellate review. *See United States v. Nguyen*, 28 F.3d 477, 480 (5th Cir. 1994) ("[a]ll credibility determinations and reasonable inferences are to be resolved in favor of the jury's *verdict"); Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1989) ("we should not substitute our view of the evidence for that of the fact-finder"); *Cobb v. Wainwright*, 666 F.2d 966, 971 (5th Cir. 1982) ("the jury has the sole responsibility to judge the weight and credibility of the evidence").  Petitioner has wholly failed to show that the state court's denial of this claim was unreasonable, and his fifth ground should be denied.

## IX.  RECOMMENDATION

The request for habeas corpus relief pursuant to 28 U.S.C. § 2254 should be **DENIED** with prejudice.

**SIGNED on this 7th day of January, 2015.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

24